OPINION
{¶ 1} Relator-appellant, Ray D. Hamby, appeals from a judgment of the Franklin County Court of Common Pleas denying his request for a writ of mandamus ordering respondent-appellee, Ohio Public Employees Retirement System ("PERS"), to vacate its decision denying appellant permanent disability retirement benefits and issue a decision granting said benefits. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} Appellant is a former employee of the City of Worthington, where he was employed as an animal warden. On October 10, 2005, appellant was involved in an automobile accident which resulted in injury to his neck. Appellant did not work for approximately two months after the accident and then returned to part-time work, with *Page 2 
restrictions. He continued to work until March 17, 2006. On August 2, 2006, appellant submitted an application to PERS for disability retirement benefits. In support of his application, appellant submitted reports of Drs. Karl Haecker, Gregory Richards, Jeffrey Fisher, and Robin Hunter.
 {¶ 3} Upon receipt of appellant's application for disability retirement benefits, PERS requested that he submit to an independent medical examination. Dr. Robert Stephenson performed this examination and issued a report on September 11, 2006. Dr. Stephenson opined that there was insufficient objective medical evidence to support a permanent disability finding. By letter dated October 18, 2006, PERS informed appellant that his disability application was denied. The letter informed appellant of his right to appeal this determination.
 {¶ 4} Appellant appealed the determination and submitted additional medical evidence to support his application. In response, PERS requested that appellant undergo another independent medical examination. This examination was performed by Dr. Lynn Richardson, who issued a report regarding the examination on December 1, 2006. Dr. Richardson opined that appellant was not permanently incapacitated from his duties as an animal warden. A PERS medical consultant reviewed Dr. Richardson's report and recommended that the application be denied. By letter dated December 20, 2006, PERS informed appellant that his application for disability benefits was again denied. The letter additionally indicated that any future applications for a disability benefit filed by appellant using a new "disability application Form DR-1" must include current medical evidence supporting progression of the disabling condition or evidence of a new disabling condition.
 {¶ 5} On January 19, 2007, appellant's counsel sent a letter to PERS in response to the December 20, 2006 denial. The letter cites alleged problems and/or inaccuracies *Page 3 
in the reports of Drs. Richardson and Stephenson. Counsel for appellant submitted, in connection with the letter, a report regarding a "functional capacity evaluation" that was conducted on January 17, 2007.
 {¶ 6} In response to the letter from appellant's counsel, PERS requested that appellant submit to a third independent medical examination. This examination was performed by Dr. James Powers on February 27, 2007. Dr. Powers resolved that he "[did] not see objective findings that would prevent [appellant] from performing the duties of his job once he completes a good pain management and reconditioning program. This should not take a full year. Therefore, I do not feel that he is permanently disabled from his job." A PERS medical advisor reviewed Dr. Powers' report in connection with appellant's application and recommended that PERS deny permanent disability benefits. By letter dated March 21, 2007, PERS informed appellant that its board had decided to uphold its previous action to deny appellant's application. The PERS retirement board concluded that appellant was not permanently disabled from performing his job duties as an animal warden.
 {¶ 7} On June 28, 2007, appellant filed a complaint in mandamus requesting an order directing PERS to vacate its decision denying appellant permanent disability retirement benefits and to issue a decision granting said benefits. PERS filed an answer to appellant's complaint. On December 21, 2007, appellant filed a "motion for judgment on the administrative record." PERS filed a response, and appellant filed a reply brief. A sur-reply was filed by PERS, with leave of court.
 {¶ 8} On March 11, 2008, the trial court issued a decision on the matter and resolved that appellant failed to show that PERS's decision to deny him permanent disability retirement benefits was not supported by "some evidence." Accordingly, the trial *Page 4 
court denied appellant's petition in mandamus. Appellant appeals from this decision and asserts the following single assignment of error for our review:
 The Court of Common Pleas erred in denying Relator-Appellant's application for a writ of mandamus.
 {¶ 9} Appellant sets forth two main arguments as to why, in his view, the trial court erred in denying his request for a writ of mandamus. First, appellant argues that the trial court erred in adopting rationales not actually adopted by PERS to support PERS's decision to deny appellant's request for permanent disability retirement benefits. Second, appellant contends that the trial court erred in resolving that PERS's decision denying his request was supported by "some evidence."
 {¶ 10} The parties disagree over the appropriate standard of review for this court in this appeal. Appellant, citing State ex rel. Torres v.State Teachers Retirement Bd., Franklin App. No. 03AP-25, 2003-Ohio-5449, contends that this court's review of the trial court's denial of the writ is de novo. In Torres, the appellant filed a complaint in mandamus alleging that the State Teachers Retirement Board ("STRB") had abused its discretion in denying her disability retirement benefits. STRB moved for summary judgment, which the trial court granted. Having granted STRB's motion for summary judgment, the trial court denied the requested writ. The appellant appealed from the decision of the trial court granting summary judgment in favor of the appellee and denying her petition for a writ of mandamus. This court applied a de novo standard of review, noting that appellate review of a ruling on a summary judgment motion is de novo. See id.
 {¶ 11} PERS, citing Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, asserts that the trial court's decision in the case at bar should be reviewed under an *Page 5 
abuse-of-discretion standard. However, the standard of review discussed in Pons concerned appellate review of an administrative appeal. The case at bar involves an appeal of a denial of a requested writ. Even so, PERS's position does have basis in the case law, as it has been stated that the standard of review for determining whether a court properly granted or denied a writ of mandamus is abuse of discretion. SeeState ex rel. Hrelec v. Campbell (2001), 146 Ohio App.3d 112, 117, citing State ex rel. Ney v. Niehaus (1987), 33 Ohio St.3d 118.
 {¶ 12} In the final analysis, regardless of whether we apply a de novo or abuse-of-discretion standard of review in this appeal, we find that the trial court did not err in denying appellant's requested writ of mandamus.
 {¶ 13} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28. "[I]n the absence of an available appeal, mandamus is an appropriate remedy by which claimants can obtain relief from an adverse determination concerning disability retirement benefits or other retirement decisions." State ex rel. Pontillo v. Pub. Emp. RetirementSys. Bd., 98 Ohio St.3d 500, 2003-Ohio-2120, at ¶ 23. Stated differently, "`mandamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.'" State ex rel. Schaengold v. Ohio Pub. Emp.Retirement Sys., 114 Ohio St.3d 147, 2007-Ohio-3760, at ¶ 8, quotingState ex rel. Pipoly v. State Teachers Retirement Sys.,95 Ohio St.3d 327, 2002-Ohio-2219, at ¶ 14. Because appellant had no statutory right to appeal PERS's final decision denying appellant's *Page 6 
application for permanent disability retirement benefits, an action in mandamus was the appropriate method for appellant to seek relief.
 {¶ 14} The issue becomes whether PERS abused its discretion in denying appellant's application for permanent disability retirement benefits. InKinsey v. Bd. of Trustees of the Police Firemen's Disability PensionFund (1990), 49 Ohio St.3d 224, 226, the Supreme Court of Ohio held that mandamus relief must be denied when there is "some evidence" to support the retirement system's decision. Thus, when there is "some evidence" to support the decision, the retirement system has not abused its discretion. See id. This standard applies to PERS decisions. SeeSchaengold.
 {¶ 15} Therefore, to determine whether appellant has a clear legal right to a writ of mandamus, we must determine whether PERS abused its discretion by entering a decision that is not supported by "some evidence." Consequently, the central issue in this appeal is whether PERS's decision to deny appellant's application for permanent disability retirement benefits is supported by "some evidence."
 {¶ 16} Before we address the issue of whether there was "some evidence" to support PERS's decision, we address appellant's argument that the trial court erred in adopting rationales to support PERS's decision that PERS itself did not adopt. Appellant argues that, pursuant to State ex rel. Green v. Pub. Employees Retirement Sys. (June 22, 1999), Franklin App. No. 98AP-567, this court determined that PERS must set forth in writing the rationales for its decisions. Appellant reasons that the logical corollary to this rule is that judicial review of PERS's decisions are limited to the rationale given by PERS in its denial letter. Essentially, appellant's argument is that a court, in a mandamus action, cannot review the administrative record to search for evidence that might support PERS's decision, when PERS did not specifically identify that evidence as a basis for its *Page 7 
decision. Specifically, it is appellant's contention that the trial court should not have cited the reports of Drs. Stephenson and Richardson as supporting PERS's decision when these reports were not expressly cited by PERS in the March 21, 2007 letter.
 {¶ 17} PERS argues that appellant's reliance on Green is misplaced. We agree. In Green, this court, citing former Ohio Adm. Code 145-11-02, as well as State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203, and State ex rel. Montague v. Police Firemen's Disability PensionFund (1992), 78 Ohio App.3d 661, determined that PERS must specify the basis of its decision in any denial of disability benefits. Pursuant toNoll, the Industrial Commission of Ohio is required to set forth the evidence relied upon and provide an explanation for its denial of an application for benefits. In Montague, this court applied the rationale underlying Noll to decisions of the board of trustees of the Police and Firemen's Disability and Pension Fund. Former Ohio Adm. Code 145-11-02
provided that the PERS board's denial of a disability benefit shall state its basis of denial and was repealed on January 1, 2003. See 2002-2003 Ohio Monthly Record 1304. The new version of the rule, now codified at Ohio Adm. Code 145-2-23, does not require the PERS board to state the basis for its denial of an application of a disability benefit.
 {¶ 18} Even so, appellant argues that the language in former Ohio Adm. Code 145-11-02 only provided an ancillary basis for this court's decision in Green, and the absence of such language does not alter the continued applicability of the reasoning supporting the Green decision. This contention is not persuasive. The idea that the rationale fromNoll should apply to decisions from PERS, in the absence of a statute or regulation indicating that PERS must issue a decision stating the basis for the denial, is not tenable in view of the Supreme Court of Ohio's decision in State ex rel. Lecklider v. School Emp. Retirement Sys.,104 Ohio St.3d 271, 2004-Ohio-6586. In Lecklider, the court stated: *Page 8 
 * * * In mandamus proceedings, the creation of the legal duty that a relator seeks to enforce is the distinct function of the legislative branch of government, and courts are not authorized to create the legal duty enforceable in mandamus.
 * * * "[N]othing in the statute or regulations suggests that the SERS retirement board or the members of its medical advisory board must issue a decision [stating the basis for its denial]."
Id. at ¶ 23. See, also, State ex rel. Smith v. School EmployeesRetirement Sys., Franklin App. No. 06AP-987, 2007-Ohio-3996, at ¶ 27
(stating that "[n]o matter how desirable it would be to have SERS identify the evidence it relies upon and provide a brief explanation when it denies disability retirement benefits, the statutes and rules which apply to SERS do not require that SERS state the basis for its denial of disability retirement.")
 {¶ 19} Appellant contends that even if PERS was not required to explain its decision, review of the decision must be limited to the basis expressed by PERS. In State ex rel. Torres v. State TeachersRetirement Bd. of Ohio, Franklin App. No. 03AP-25, 2003-Ohio-5449, at ¶ 14, this court stated that "[although STRB has no clear legal duty cognizable in mandamus to specify or explain the evidence it relied upon or its rationale for granting or denying an application for disability, where STRB presents its reasoning and evidence, its written decision is reviewable in mandamus to determine whether STRB has abused its discretion." Appellant asserts that PERS's decision was solely based on Dr. Powers' report and, therefore, the analysis in this mandamus action centers on whether Dr. Powers' report constituted "some evidence" upon which PERS could deny appellant's application for permanent disability benefits. Appellant's position is not consistent with the evidence. *Page 9 
 {¶ 20} The March 21, 2007 letter sent from PERS to appellant informing him that the board had decided that he was not permanently disabled indicates that the board reviewed all medical documentation submitted in connection with appellant's application. The letter discusses in some detail the most recent independent medical examination, which was performed by Dr. Powers. The letter indicates that a PERS medical consultant reviewed Dr. Powers' report as well as appellant's attending physician's reports, and, based on this review, determined that appellant was not permanently disabled from the performance of his job duties as an animal warden. The letter further states: "Based upon review of all the medical information and recommendations, the OPERS retirement board at its March 21, 2007 board meeting concurred with the conclusion that you are not permanently disabled from performing your job duties as an Animal Warden. The board upheld its previous action to deny the application." It is clear from a review of the March 21, 2007 letter that PERS denied the application based on its review of Dr. Powers' report, as well as the other medical evidence in the file, even though the reports of Drs. Stephenson and Richardson were not expressly cited. Said letter was essentially the culmination of the proceedings before PERS.
 {¶ 21} Appellant filed his disability benefit application with PERS on August 2, 2006, and he was examined subsequent to that application pursuant to R.C. 145.35(E), which provides in part as follows:
 Medical examination of a member who has applied for a disability benefit shall be conducted by a competent disinterested physician or physicians selected by the board to determine whether the member is mentally or physically incapacitated for the performance of duty by a disabling condition either permanent or presumed to be permanent. The disability must have occurred since last becoming a member or have increased since last becoming a member to such extent as to make the disability permanent or presumed *Page 10 
to be permanent. A disability is presumed to be permanent if it is expected to last for a continuous period of not less than twelve months following the filing of the application. * * *
 {¶ 22} Dr. Stephenson was the first independent medical examiner to examine appellant. Relator does not deny that Dr. Stephenson opined, based on his examination of appellant, that there was insufficient objective medical evidence to support a permanent disability finding. Appellant essentially argues that PERS did not rely upon Dr. Stephenson's report in denying his application in March 2007 because his report was not specifically identified in the March 2007 letter. As discussed above, although the March 21, 2007 letter from PERS to appellant does not specifically identify Dr. Stephenson's report, the letter indicates that PERS was denying the application on the basis of its review of all pertinent medical information and recommendations concerning appellant's application, which would necessarily include Dr. Stephenson's report.
 {¶ 23} After appellant appealed PERS's first determination, a second independent medical examination was conducted. This examination was performed by Dr. Richardson, who, upon completing the examination, opined that appellant "is not permanently incapacitated from his duties as an animal warden." Appellant claims that Dr. Richardson's report contained "two significant misstatements, which apparently led OPERS to discount it after Hamby called the errors to OPERS's attention." (Appellant's merit brief, at 5.)
 {¶ 24} Appellant contends that Dr. Richardson confused appellant's left arm with his healthier right arm when she made the statement that "when [appellant] removed his sweatshirt, he rotated his shoulder without difficulty." In her report, Dr. Richardson discussed her view that appellant demonstrated inappropriate pain behaviors during the physical examination. In support of this view, Dr. Richardson identified appellant's *Page 11 
inconsistent behavior as to his shoulder. The report states: "There is an inconsistency in the examination as when Mr. Hamby removed his overhead sweatshirt from his head from his body, he appeared to do this without significant difficulty. Again, when asked to perform range of motion with his bilateral arms and reach his arms above his head, he did not abduct his arm past 90 degrees; however, when he removed his sweatshirt, he rotated his shoulder without difficulty." Apparently, appellant views these observations as inconsistent with Dr. Richardson's statement that when appellant was asked to remove his overhead sweatshirt for the physical examination, "[appellant] reached his right arm over his head and pulled his sweatshirt off without difficulty." Although this statement specifies how appellant pulled the sweatshirt off, it does not specify how he positioned his left arm in performing this task. We do not view Dr. Richardson's observations and discussion as necessarily demonstrating confusion by her regarding which of appellant's arms he alleged was causing him pain.
 {¶ 25} Appellant also argues that Dr. Richardson erroneously concluded that appellant would be able to use a firearm. The Worthington Division of Police Policy and Procedure Manual indicates that an animal control warden is permitted to transport and use approved firearms while acting in the scope of his or her duties. The manual identifies a .22 caliber rim-fire rifle as the weapon to be utilized by the "Animal Control function." The prescribed firearm is normally secured with an electronic locking system contained within the "Animal Control Vehicle." Pursuant to the manual, all animal wardens must annually obtain a qualifying score with the rifle assigned to the Animal Control function. To obtain a qualifying score, the animal warden must demonstrate safe handling and care and proficiency in firing the weapon. The duties of an animal warden include securing animals at large and caring for animals. *Page 12 
 {¶ 26} Regarding the use of a firearm, Dr. Richardson opined: "[Appellant] presented to me today without the use of his narcotic medication and only took an NSAID and this medication would not impair his cognitive ability to discharge a firearm." According to appellant, Dr. Richardson's statement was misleading because appellant was taking narcotic medication everyday, and the only reason he had not taken the medication that day was because he had to drive himself to the appointment. Appellant is correct that Dr. Richardson did not specifically address the potential impact of taking narcotic medication on appellant's ability to properly and safely discharge a firearm. Unlike appellant, however, we do not view this omission as a deficiency that would preclude PERS from relying upon the report. In her report, Dr. Richardson identified appellant's then current medications as including Darvocet, four times a day, but she noted that he did not take any on the morning of the examination. Thus, Dr. Richardson examined appellant when he had yet to take any narcotic medication for the day, and she was able to examine him under that circumstance. Dr. Richardson also conveyed her awareness that appellant's job duties included the ability to discharge a firearm. The ultimate issue to be decided by Dr. Richardson was whether, in her professional opinion, appellant was permanently disabled. In her opinion, he was not.
 {¶ 27} Moreover, we find as unpersuasive appellant's argument that PERS requested an additional independent medical examination because of deficiencies in Dr. Richardson's report. Appellant is correct that the request for a third independent medical examination was in response to appellant's challenge to PERS's determination in December 2006. But nothing in the record demonstrates that PERS requested a third independent medical examination because it viewed Dr. Richardson's report as deficient. *Page 13 
 {¶ 28} After the additional challenge to the determination of PERS, Dr. Powers, the third independent medical examiner, examined appellant on February 27, 2007. Dr. Powers indicated in his report that he knew that appellant was an animal warden, and he further indicated that he reviewed the description of that job. Dr. Powers explained his reasoning for why he believed appellant was not permanently disabled. His report states in part: "I do not see objective findings that would prevent [appellant] from performing the duties of his job once he completes a good pain management and reconditioning program. This should not take a full year. Therefore, I do not feel that he is permanently disabled from his job."
 {¶ 29} Appellant argues that Dr. Powers' report did not constitute "some evidence" upon which to deny his application for disability retirement benefits. Defendant argues that Dr. Powers, like the other independent medical examiners, did not address the issue of whether appellant would be able to carry and use a firearm, which is one of the duties of an animal warden. Essentially, appellant argues that the physicians should have analyzed, in more detail, appellant's ability to safely and properly discharge a firearm. Although the independent medical examiners could have analyzed, in more detail, appellant's ability to safely and properly discharge a firearm, we find that each of these physicians demonstrated an understanding of appellant's duties as an animal warden, and that each of their reports reflect consideration of those duties in the context of reaching an opinion as to whether appellant is permanently disabled.
 {¶ 30} Additionally, appellant contends that PERS was required to grant his application unless there was "some evidence" that he would be able to return to work within 12 months of the date of his application, which was signed by him on July 31, 2006. Appellant reasons that Dr. Powers' report does not constitute "some evidence" that *Page 14 
appellant would be able to return to work within 12 months of the date of his application for disability retirement benefits, or July 31, 2007, because the doctor did not opine that appellant would be able to return to work by July 31, 2007.
 {¶ 31} The trial court found this "timing" argument to be unpersuasive for two reasons. First, the trial court resolved that appellant's appeal that resulted in Dr. Powers examining appellant was effectively a second application for benefits. Viewed as a second application, the 12-month period set forth in R.C. 145.35(E) began anew on January 19, 2007. The trial court noted that Dr. Powers opined that, if appellant completes a good pain management and reconditioning program, then it should not take a full year before he could resume his duties as an animal warden. The trial court essentially reasoned that Dr. Powers' report indicates that appellant could have been back to work before one year after he filed his second application, which would have been January 19, 2008.
 {¶ 32} Second, the trial court observed that under R.C. 145.35(E) a disability "is only presumed to be permanent if it lasts longer then twelve months after the application. Any presumption can be rebutted." (Emphasis sic.) (March 11, 2008 Decision and Entry, at 8.) The trial court noted that three independent physicians determined that appellant was not permanently disabled.
 {¶ 33} Because we do not view the January 19, 2007 letter challenging PERS's decision as a second application, we do not agree with the trial court's analysis in that regard. However, we do agree with the trial court insofar as it determined that any presumption of permanent disability was rebuttable. We further agree that any presumption was rebutted by the three independent medical examiners, and that the *Page 15 
medical reports and opinions of these physicians constituted "some evidence" supporting the decision to deny appellant's application for disability benefits.
 {¶ 34} Based on the foregoing, we resolve that the trial court did not err in concluding that there was "some evidence" to support PERS's decision to deny appellant's disability benefit application. Therefore, we conclude that the trial court did not err in denying appellant's application for a writ of mandamus. Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK and T. BRYANT, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1